UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARCIA HARRIS,

    Plaintiff,

    v.

FRANCE TELECOM, S.A., CLOUD SANTÉ S.A.S., NEOWAVE S.A.S., DR. PATRICE CRISTOFINI, DR. YVES MIAUX, BARBARA NGUOYOMBO, HAMMOND BALE SOLICITORS, L.L.P., and MARTIN BALE,

    Defendants.

No. 11 CV 357
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcia Harris ("Plaintiff" or "Harris") was removed as director and CFO of an English high-technology startup company. She brings this action *pro se* against her former business associates and related entities. She seeks equitable relief and damages for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, Civil RICO, 18 U.S.C. § 1961 *et seq.*, the Illinois Trade Secrets Act, 765 ILL. COMP. STAT. 1065 § 1 *et seq.,* the Illinois Uniform Fraudulent Transfer Act, 740 ILL. COMP. STAT. 160 § 1. She also claims breach of fiduciary duty and fraud.

I dismiss this action under the common law doctrine of *forum non conveniens*.

## I. BACKGROUND

The eighty-six page complaint is rich in factual detail, likely due to the *pro se* plaintiff's intimate association with the underlying incidents. The whole roster of facts is therefore not recounted here; this is a summary of the most basic, relevant facts.

**A. The Parties**

Plaintiff Marcia Harris is a United States citizen and resident of Chicago, Illinois. Though she proceeds here *pro se*, she is licensed to practice law in the state of New York and in the United Kingdom. Harris holds nineteen percent of the shares of a liquidated company, Anoigma Ltd. She was a former director and senior officer of the company.

Defendant France Telecom-Orange, S.A. ("FTSA") is a French company headquartered in Paris.

Defendant Cloud Santé S.A.S. is a French health care technology company located in Meyreuil, France. Citing a judgment she obtained in her favor in England, Plaintiff alleges that Cloud Santé is Anoigma's successor.

Defendant Neowave is a French company located in Gardenne, France. Neowave manufactures USB memory drives and other high technology products. Some of these products are distributed in the United States.

Defendant Dr. Yves Miaux is currently the Science and Technology Advisor in France's embassy in China. He owns five percent of Anoigma and twenty-three percent of Cloud Santé.

Defendant Barbara Ngouyombo was a director and CEO of Anoigma. She remains the majority shareholder. She is currently President of Cloud-Sante. Plaintiff alleges that she resides in either London or Southern France.

Defendant Hammond Bale Solicitors, L.L.P. is an English legal services firm with offices in London and Paris. Defendant Martin Bale is a partner in the firm who lives and works in London.

**B. Relevant Facts**

At the center of this dispute is a now-liquidated company, Anoigma Ltd. Anoigma was created in 2008 under the corporate laws of England and Wales. Harris resided in England at the time and had lived there for several years.

On or about December 1, 2008, she became director of Anoigma and became employed at the company as Managing Director. In June of 2009, she became the company's CFO.

Anoigma's business was providing health care-related information technologies. Using what Harris claims is valuable intellectual property[1], the company offered a variety of hardware- and software-based solutions for the transportation and translation of medical records. The core functionality was a nexus between online medical information and a portable USB stick that would be carried by patients.

Plaintiff claims that Defendants conducted a "sophisticated fraud scheme designed to destroy Harris's interests in a company holding the trade secrets and other assets developed by Anoigma." The basic time line is as follows. From its inception through June 2009, Anoigma paid staff (among them, Defendant Ngouyombo, Anoigma's President) and external consultants to develop the intellectual property to put the company's core functionality into practice. That development took place at an "incubation center" in Meyreuil, France. Earning a place at the incubation center was a competitive process which resulted in certain benefits from the French government.

---

[1] Harris explains that while computer software is not patentable in the United Kingdom, software is frequently protected as a trade secret.

During the same time frame, the company was looking for investors and partners. One important partner was Defendant Neowave, which was to be Anoigma's exclusive supplier of USB drives. Another such partner was Almerys, an operating entity of Defendant FTSA. Through Almerys, FTSA is claimed to have sought a joint product development and sales agreement with Anoigma.

On May 20, 2009, Plaintiff and Ngouyombo met with Defendant Cristofini in Paris. Cristofini is Head of Partnerships and Strategic Alliances in the "Orange Healthcare Division" of FTSA. Cristofini was allegedly interested in Anoigma's concept. Following the May meeting, on June 3, 2009, Cristofini sent a letter on behalf of FTSA stating: "...we hereby inform you that we wish to assess together with you, the opportunity to utilize your technological solution, in relation with our current development of our offerings." By agreement signed in September 2009, Cristofini became a non-executive board member in Anoigma, effective retroactively to April 30, 2009.

By the time that contract was signed in September of 2009, Cristofini and Ngouyombo were alleged to have been speaking "virtually daily." Also in September of 2009, Plaintiff moved her personal property back from London to Chicago. She returned to London for a six-week period in the fall, but otherwise has remained resident in Chicago since September 2009 and conducted some work on behalf of Anoigma while residing in Chicago.

Plaintiff claims that, unbeknownst to her, in November 2009, Defendants conspired to create the company Cloud-Sante. The first significant step in Cloud Santé's creation came on December 21, 2009, while Plaintiff was in Chicago. On that date, Defendants Cristofini, Miaux, and Ngouyombo filed documents with Bank National Paribas related to the establishment of the

4

new firm. Cloud Santé was the corporate shell into which Defendants allegedly moved all of the intellectual property and other assets of Anoigma, with one key difference. That difference, of course, was the ownership stake of Plaintiff. Plaintiff had no shares in Cloud Santé while Defendants Cristofini and Miaux had significantly increased ownership stakes relative to their shares in Anoigma.

On January 5, 2010, Plaintiff was removed as a director in Anoigma. Later that same month, Anoigma entered liquidation. By December 23, 2010, Plaintiff had won a civil suit in the courts of England. The judgment proclaimed Cloud Santé a successor of Anoigma and awarded Plaintiff damages for wrongful termination for corporate whistleblowing, the only claim brought in that lawsuit. On January 18, 2011, Plaintiff filed this more expansive action.

## II. ANALYSIS

Defendant FTSA moves to dismiss this action on multiple grounds, including jurisdictional and substantive objections. They also urge dismissal under the doctrine of *forum non conveniens*.

*Forum non conveniens* (*"forum non"*) is a common law doctrine that allows a federal district court to dismiss a suit over which it would normally have jurisdiction. *Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). It is within my discretion to consider a *forum non* plea before jurisdictional challenges. *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Granting or denying the motion to dismiss based on *forum non* principles is also within my discretion. *See Abad v. Bayer Corp.* 563 F.3d 663, 666 (7th Cir. 2009).

Dismissal on *forum non* grounds requires consideration of a range of factors, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality. *Sinochem,* 549 U.S. at 429. Two conditions must be met for *forum non* to be applied: (1) there is an available and adequate alternative forum that has jurisdiction over the case; and (2) the balance of private and public interest factors weighs in favor of dismissal. *Clerides v. Boeing Co.,* 534 F.3d 623, 628 (7th Cir. 2008); *In re Bridgestone/Firestone, Inc.,* 420 F.3d 702, 703-04 (7th Cir. 2005).

Defendant bears the burden in earning a *forum non* dismissal, and there is typically a strong presumption in favor of a plaintiff's choice of forum. *Sinochem,* 549 U.S. at 430. This is especially true when the plaintiff has chosen her home forum. In such cases, the Defendant "bears a heavy burden." *Id.*

On the other hand, courts have recognized that "'where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished.'" *In re European Aeronautic Defence & Space Co. Sec. Litig.*, 703 F. Supp. 2d 348, 361 (S.D.N.Y. 2010) (quoting *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir.1993) (per curiam)). The specific circumstances of this case may similarly dilute plaintiff's choice of forum. Plaintiff had been living in England both before the events at issue here and during some of the relevant time frame, had spent significant portions of her professional life overseas (including obtaining a law license in the U.K.), and was additionally a fluent French speaker who had extensive business travels to France. So describing Chicago as Plaintiff's "home forum" is, in this case, arguably misleading,

even if technically true. Nevertheless, because the result would be the same regardless of the strength of the presumption, I need not decide the issue.

**A. Availability and Adequacy of Alternative Fora**

The availability and adequacy of another forum are necessary conditions of a *forum non* dismissal. An alternative forum is "available" if all parties are amenable to service of process and are subject to jurisdiction in that forum. *Stroitelstvo*, 589 F.3d at 421. The forum is "adequate" if it provides a fair hearing that offers a potential remedy for the subject matter of the dispute. *Id.* The remedy need not be as comprehensive or as favorable as the American claims, they need only offer some avenue of redress. *Id.*

In support of an availibility and adequacy determination, Defendant offers the sworn declaration of Professor George A. Bermann.[2 3] After analyzing the allegations in the complaint and other briefings and submissions, Professor Bermann concluded that all Defendants would be subject to jurisdiction in either France or the United Kingdom. Professor Bermann explains that every Defendant save Dr. Miaux is a European Union domiciliary. The E.U. Defendants are

---

[2]Professor Bermann holds the Jean Monnet Chair in European Union Law and directs the European Legal Studies Center at Columbia Law School. He has also taught at the Sorbonne Law School of the Universite de Paris I, among other prestigious French institutions, for twenty-five years. He is a Council Member of the newly formed European Law Institute, is a current president of the world-wide International Academy of Comparative Law and past president of the American Society of Comparative Law. He has researched, published, and taught extensively in the areas of French and European Union law, transnational litigation, comparative law, and other related fields.

[3]Plaintiff objects to my consideration of Professor Bermann's declaration because Defendant did not offer it in their initial motion to dismiss. I allowed Plaintiff extra time and a sur-reply to counter any prejudice inherent in the late filing of the declaration. Therefore, no prejudice has resulted. Tellingly, Plaintiff offers no substantive dispute of Professor Bermann's conclusions.

plainly within the jurisdiction of either France or the U.K. As for Dr. Miaux, Professor Bermann declares without doubt that the specific facts and allegations of this case would render him subject to either French or English jurisdiction. Given Professor Bermann's obvious expertise in these areas and his detailed and persuasive declaration, I accept and adopt his conclusions. Either one of France or the U.K. are "available" to Plaintiff.

As for adequacy, Professor Bermann explicates the available causes of action in both jurisdictions. In both France and the U.K., the claims would be brought as fraud, breach of fiduciary duty, and disclosure of trade secrets. In France, all three claims provide for the remedy of damages. In the U.K., damages are available for all three claims, as well as injunctive relief in the case of disclosure of trade secrets. In either France or the U.K., therefore, multiple causes of action can provide potential relief for the general theories. It is true that neither Civil RICO nor the state statutory claims are available in either France or the U.K., but as noted above, the avenues for redress need not be as comprehensive or favorable as the specific causes of action pursued in the American jurisdiction. *Stroitelstvo*, 589 F.3d at 421. In particular, "federal courts have routinely held that the loss of a RICO claim does not by itself preclude *forum non conveniens* dismissal." *Id.* (citing *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 n. 6 (10th Cir. 2009)).

Plaintiff contends that the French civil law system has a fundamentally different approach to private litigation, and that therefore France is inadequate as a forum. If true, that would leave the U.K. as an available and adequate forum, and one forum is enough. Even so, I decline to adopt Plaintiff's view. Though different in its approach to litigation, one would be hard-pressed

8

to declare the entire legal system of France - an advanced western democracy - so fundamentally unfair as to make it an inadequate forum for private legal disputes.

As either or both of France and the United Kingdom are available and adequate - and hence provide "alternative" fora for purposes of a *forum non* analysis - I move on to balance the private and public interests at stake.

## B. Balancing Private and Public Interest Factors

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the leading case on *forum non* dismissals, established that a constellation of both private and public interest factors ought to inform a court's *forum non conveniens* decision. *See Clerides*, 534 F.3d at 628.

### i. Private Interest Factors

The private interest factors that a court should consider include

[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil,* 330 U.S. at 508. The enforceability of the judgment, if one is obtained, is also a private interest factor. *Id.*

Here, the private interest factors overwhelmingly favor a European fora, either the U.K. or France. Substantially all of the alleged conduct of Defendants took place in either England or France. Therefore, both documentary evidence and the witnesses would come to Chicago for trial from one or both of those countries, at great expense. It is true that Plaintiff herself is here and some documentary evidence may be with her in Chicago. Regardless, all the Defendants,

9

their witnesses, and likely a substantial additional amount of documents would have to travel or be shipped overseas to hold trial here. Regarding the enforceability of a judgment, Plaintiff seeks injunctive relief. Enforcing such relief on an array of foreign Defendants - if warranted and permissible - would present practical difficulties for the court.

**ii. The Public Interest Factors**

The public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 508-09.

The public interest factors also favor Defendant, though not as overwhelmingly as the private interest factors. Little has been presented regarding the relevant court congestion. As Defendants bear the burden in a *forum non* motion, I shall assume that factor favors Plaintiff. The factors regarding choice of law also slightly favor Plaintiff. While it is true that Anoigma was formed under English law, the corporate structure of Anoigma is not significantly at issue here. Rather, it is the alleged statutory and tortious misdeeds of Defendant that would be analyzed. Without conducting a full choice-of-law analysis, even if, as Defendants argue, the claims sounding in American law cannot apply to the action, that would leave the European analogs. Those claims, as Defendants' own expert explained, would sound in fraud, breach of fiduciary duty, and disclosure of trade secrets. Those are familiar concepts, ones this court could likely wade through without significant difficulty.

The public interest factor favoring Defendant is the local interest factor. As recounted above, Anoigma was an English company and substantially all of this dispute arose from actions

10

alleged to have occurred in either England or France. The original idea was cultivated in London, significant discussion took place either there or in Paris with Dr. Cristofini, and the incubation center was in Meyreuil, France. Either or both of England or France, therefore, have substantially more local interest than does the Northern District of Illinois.

As for jury duty, if jurors from the Northern District were called to hear this case, they would likely scratch their heads, wondering why they were called to hear about the demise of an English high-tech startup, where the surrounding conduct took place largely in England or France. Perhaps recognizing this, Plaintiff has waived her right to jury duty, nullifying this factor.

**C. Weighing the Factors**

As a general rule, a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant. *Id.* at 255; *Sinochem,* 127 S. Ct. at 1191. I noted above that this may be a case where the Plaintiff's choice should be given somewhat less presumptive weight, but in assessing the factors it is clear that *forum non* dismissal is appropriate regardless of the presumption. The private interest factors strongly favor the Defendants, and while some of the public interest factors point to Plaintiff, the "local interest" public factor weighs heavily toward dismissal. When all the facts and circumstances of this case or evaluated, it is clear that the case should be brought in of two European fora.

## III. CONCLUSION

For the reasons stated above, this case is dismissed as to all Defendants under the doctrine of *forum non conveniens*.

ENTER:

_____
James B. Zagel
United States District Judge

DATE:  August 22, 2011